IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MIKKO SEKIYA,

        Plaintiff,

vs.                                     No. CIV 19-0146 JB\JHR

JOHN ANDERSON,
TIMOTHY TREMBLEY, and the
UNITED STATES OF AMERICA,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Prisoner Civil Rights Complaint Pursuant to 42 U.S.C. § 1983, filed February 21, 2019 (Doc. 1)("Complaint").  Plaintiff Mikko Sekiya is pro se and proceeding in forma pauperis.  He alleges that a doctor implanted a wiretap device in his nasal passage, and that federal prosecutors used the wiretap to gain information.  See Complaint at 2, 14.  Sekiya further alleges that jail officials subjected him to cruel and unusual conditions of confinement.  See Complaint at 11.  Having carefully reviewed the matter under 28 U.S.C. § 1915(e) and rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court will dismiss the Complaint, but grant Sekiya leave to amend any conditions-of-confinement claims.

**FACTUAL AND PROCEDURAL BACKGROUND**

       Sekiya is a federal inmate and he is currently in custody at the Cibola County Correctional Institute ("CCCI").  See Complaint at 1.  The Complaint raises § 1983 claims against three Defendants: (i) "Dr. Shama," an ear, nose, and throat otolaryngologist physician at the University of New Mexico Hospital ("UNMH"); (ii) United States Attorney for the District of New Mexico John Anderson; and (iii) Assistant United States Attorney Timothy Trembley.   Complaint at 1-2.

Sekiya alleges that Dr. Shama performed a surgery at UNMH to correct Sekiya's deviated septum. <u>See</u> Complaint at 14.   The Complaint does not indicate when Dr. Shama performed the surgery but, based on Sekiya's allegations about "going thr[ough] this issue for five years," the Court discerns that the surgery occurred in 2014.   Complaint at 2.   Sekiya alleges that Dr. Shama implanted a wiretap surveillance device in his left nasal passage during surgery.   <u>See</u> Complaint at 2, 14.   He contends that neither Dr. Shama nor UNMH obtained a warrant or court order to implant any device.   <u>See</u> Complaint at 14.

The Complaint further alleges that the United States Attorney's Office -- specifically Mr. Anderson and Mr. Trembley -- obtained information via the nasal wiretap.   <u>See</u> Complaint at 1-2.   Sekiya contends that Mr. Anderson and Mr. Trembley do not have a warrant to monitor Sekiya via any microchips in his body.   <u>See</u> Complaint at 1-2.   The Complaint appears to suggest that Mr. Anderson and Mr. Trembley used the nasal wiretap to obtain information relevant to Sekiya's federal criminal case, <u>United States v. Sekiya</u>, No. CR 18-1575 WJ.   In that case, a jury convicted Sekiya of: (i) theft of a firearm from a licensed firearms dealer, in violation of 18 U.S.C. § 922(u); (ii) being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1); and (iii) possession of a stolen firearm, in violation of 18 U.S.C. § 922(j).   <u>See</u> Redacted Jury Verdict at 1-2, filed November 7, 2019 (CR Doc. 118).   The Honorable William Johnson, Chief United States District Judge for the United States District Court for the District of New Mexico, sentenced Sekiya to a term of ninety months imprisonment.   <u>See</u> Judgment and Conviction at 1, filed July 10, 2020 (CR Doc. 151).

The Complaint appears to raise three counts under § 1983 based on: (i) "illegal tapping of

- 2 -

one's nasal cavity"; (ii) "forced labor, slavery/privacy video voyeurism"; and (iii) "radiological dispersal devices."   Complaint at 14-15.   In the section addressing the "Nature of the Case," Sekiya appears to list other causes of action stemming from the use of a wiretap and/or the criminal prosecution, including entrapment; defamation; treason; sedition; rebellion; slavery; forced labor; sale into involuntary servitude; abuse of process; cruel and unusual punishment; and unconstitutional conditions of confinement.   Complaint at 3-8.   Sekiya also alleges that the Mr. Anderson and Mr. Trembley violated the Constitution of New Mexico, including the idea of "popular sovereignty" -- a theory where all political power is vested in the people -- and Sekiya's right to maintain "safety and happiness in any way he sees fit[.]"   Complaint at 8-9.   Based on these allegations, Sekiya seeks $3 trillion in damages and immunity from criminal prosecution. See Complaint at 16-17.   Sekiya also asks the Court to subpoena the testimony of Facebook co-founder Mark Zuckerberg, who allegedly has evidence to the support the wiretap claim, and to order a heating/plumbing technician to sweep certain buildings for wiretaps or tracking devices. See Complaint at 14-15.

After filing the Complaint, Sekiya filed at least twenty-four handwritten letters, notices, briefs, and motions.   See Dkt. Docs. 6-29 ("Supplemental Filings").   The Supplemental Filings address myriad unrelated topics, including medical scans, FBI investigations dating back to 1991, and a contract dispute among Sekiya's family members.   The Clerk's Office docketed three Supplemental Filings as motions, as those filings appeared to request discrete, discernable relief. The Motions appear to request: (i) a court mandate requiring the removal of any nasal wiretap; (ii) a request for hearing; and (iii) a venue change.   See Motion for Order -- Court Mandate at 1,

- 3 -

filed November 22, 2019 (Doc. 6); Motion for Hearing at 1, filed February 28, 2020 (Doc. 19); and Motion to Change Venue at 1, filed April 13, 2020 (Doc. 28).

The Court referred the matter to the Honorable Jerry H. Ritter, United States Magistrate Judge for the United States District Court for the District of New Mexico, for recommended findings and disposition, and to enter non-dispositive orders.   See Order Referring Case at 1, filed February 22, 2019 (Doc. 3).   Sekiya obtained leave to proceed in forma pauperis, and the matter is ready for sua sponte initial review.   See Order Granting Leave to Proceed Pursuant to 28 U.S.C. § 1915(b) at 2, filed September 16, 2019 (Doc. 5).   The Court will consider whether the filings comply with rule 8(a) of the Federal Rules of Civil Procedure, and whether the discernable allegations state a claim under rule 12(b)(6).[1]

## LAW REGARDING INITIAL REVIEW OF PRISONER COMPLAINTS

Section 1915(e) of Title 28 requires the Court to conduct a sua sponte review of all civil complaints where the plaintiff is proceeding in forma pauperis.   See 28 U.S.C. § 1915(e).   The Court must dismiss any in forma pauperis complaint that is frivolous, malicious, or "fails to state a claim on which relief may be granted."   28 U.S.C. § 1915(e)(2).   The Court may also dismiss a complaint sua sponte under rule 12(b)(6) if "it is patently obvious that the plaintiff could not

---

[1] The Honorable Judith Herrera, Senior United States District Judge for the United States District Court for the District of New Mexico, imposed filing restrictions on Sekiya in a prior civil case where he was not incarcerated, Sekiya v. Rogers, No. CIV 19-958 JCH-SCY.   See Order Imposing Filing Restrictions at 1, filed January 3, 2018 in Sekiya v. Rogers, No. CIV 19-958 JCH-SCY.   It is not entirely clear whether that Order applies to prisoner cases, where special screening rules govern initial review.   In any event, to the extent the restrictions apply to his prisoner civil rights case, the Court construes the instant Complaint as a request to file a claim as required by the Order Imposing Filing Restrictions and will review his allegations on the merits.

prevail on the facts alleged, and allowing [plaintiff] an opportunity to amend [the] complaint would be futile." <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991)(quotations omitted).   In other words, the same standard of review applies under rule 12(b)(6) and § 1915(e).

Rule 12(b)(6) tests the "sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."   <u>Mobley v. McCormick</u>, 40 F.3d 337, 340 (10th Cir. 1994)(citing <u>Williams v. Meese</u>, 926 F.2d 994, 997 (10th Cir. 1991)).   The sufficiency of a complaint is a question of law, and when reviewing the complaint, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.   <u>See</u> <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322-23 (2007)("[O]nly '[i]f a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts' would the defendant prevail on a motion to dismiss." (quoting <u>Makor Issues & Rights, Ltd. v. Tellabs, Inc</u>, 437 F.3d 588, 602 (7th Cir. 2006)(second alteration in <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>))); <u>Smith v. United States</u>, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." (citing <u>Moore v. Guthrie</u>, 438 F.3d 1036, 1039 (10th Cir. 2006))).

A complaint need not set forth detailed factual allegations, yet "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'" is insufficient.   <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)(quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).   "Threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 555 (citations and footnote omitted). Section 1915(e) expands this inquiry by granting courts "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims" that are fantastical and/or belied by the record. <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989).

To survive rule 12(b)(6) review, a plaintiff's complaint must contain sufficient "facts that, if assumed to be true, state a claim to relief that is plausible on its face." <u>Mink v. Knox</u>, 613 F.3d 995, 1000 (10th Cir. 2010)(citing <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678 (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 556). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." <u>Ridge at Red Hawk, L.L.C. v. Schneider</u>, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted). The United States Court of Appeals for the Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(citation omitted)(quoting Bell Atl.

Corp. v. Twombly, 550 U.S. at 570).

In conducting the initial review, the pleadings of the pro se prisoner "are to be construed

liberally and held to a less stringent standard than formal pleadings drafted by lawyers."   Hall v.

Bellmon, 935 F.2d at 1110.   If the court can "reasonably read the pleadings to state a valid claim

on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper

legal authority, . . . confusion of various legal theories, . . . poor syntax and sentence construction,

or . . . unfamiliarity with pleading requirements."   Hall v. Bellmon, 935 F.2d at 1110.   At the

same time, however, pro se parties must file a legible pleading that complies with rule 8, which

requires: "(1) a short and plain statement of the grounds for the court's jurisdiction . . . ; (2) a short

and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for

the relief sought[.]"   Fed. R. Civ. P. 8(a).   "It is not the role of . . . the court . . . to sort through a

lengthy . . . complaint and voluminous exhibits . . . to construct plaintiff's causes of action."

McNamara v. Brauchler, 570 F. App'x 741, 743 (10th Cir. 2014)(citations omitted).[2]   See also

---

[2] McNamara v. Brauchler is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.   See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").   The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).   The Court concludes that McNamara v. Brauchler, Dunn v. Harper County, 520 F. App'x. 723 (10th Cir. 2013), Murray v.

Pola v. Utah, 458 F. App'x 760, 761 (10th Cir. 2012)(affirming dismissal of complaint that "included everything but the kitchen sink"). Allowing such pleadings to survive screening "would force the Defendants to carefully comb through" various documents "to ascertain which . . . pertinent allegations to which a response is warranted." McNamara v. Brauchler, 570 F. App'x at 743.

## LAW REGARDING 42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. Section 1983 creates only the right of action; it does not create any substantive rights; substantive rights must come from the Constitution or from a federal statute. See Nelson v. Geringer, 295 F.3d 1082, 1097 (10th Cir. 2002)("[S]ection 1983 did not create any substantive rights, but merely enforces existing constitutional and federal statutory rights[.]")(internal quotation marks, alteration, and citation omitted). Section 1983 authorizes an injured person to assert a claim for relief against a person who, acting under color of state law, violated the claimant's federally protected rights. To state a claim upon which relief can be granted under § 1983, a plaintiff must allege: (i) a deprivation of a federal right; and (ii) that the person who

---

United States, 475 F. App'x 311 (10th Cir. 2012), Pola v. Utah, 458 F. App'x 760 (10th Cir. 2012), Thibeaux v. Cain, 448 F. App'x 863 (10th Cir. 2012), Flores v. United States Attorney General, 442 F. App'x 383 (10th Cir. 2011), Kersh v. Smeler, 390 F. App'x 836 (10th Cir. 2010), and Owens-El v. Pugh, 16 F. App'x 878 (10th Cir. 2001), have persuasive value with respect to material issues and will assist the Court in its disposition of this Memorandum Opinion.

deprived the plaintiff of that right acted under color of state law.   See West v. Atkins, 487 U.S.

42, 48 (1988).   The Court has noted:

> "[A] plaintiff must establish (1) a violation of rights protected by the federal Constitution
> or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a
> 'person' (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage,
> of any State or Territory or the District of Columbia."

Schaefer v. Las Cruces Pub. Sch. Dist., 716 F. Supp. 2d 1052, 1063 (D.N.M.

2010)(Browning, J.)(quoting Summum v. City of Ogden, 297 F.3d 995, 1000 (10th Cir. 2002)).

The Supreme Court clarified that, in alleging a § 1983 action against a government agent

in their individual capacity, "a plaintiff must plead that each Government-official defendant,

through the official's own individual actions, has violated the Constitution."   Ashcroft v. Iqbal,

556 U.S. at 676.   Consequently, there is no respondeat superior liability under § 1983.   See

Ashcroft v. Iqbal, 556 U.S. at 675 ("Because vicarious liability is inapplicable to Bivens and

§ 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's

own individual actions, has violated the Constitution."); Bd. of Cty. Comm'rs v. Brown, 520 U.S.

397, 403 (1997).   Entities cannot be held liable solely on the basis of the existence of an employer-

employee relationship with an alleged tortfeasor.   See Monell v. Dep't of Soc. Servs. of City of

N.Y., 436 U.S. 658, 689 (1978).   Supervisors can be held liable only for their own

unconstitutional or illegal policies, and not for their employees' tortious acts.   See Barney v.

Pulsipher, 143 F.3d 1299, 1307-08 (10th Cir. 1998).

The Tenth Circuit recognizes that non-supervisory defendants may be liable if they knew

or reasonably should have known that their conduct would lead to the deprivation of a plaintiff's

constitutional rights by others, and an unforeseeable intervening act has not terminated their

liability.   See Martinez v. Carson, 697 F.3d 1252, 1255 (10th Cir. 2012)(quoting 42 U.S.C. § 1983 and Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 2006)(internal quotation marks omitted)). The Tenth Circuit also recognizes that Ashcroft v. Iqbal limited, but did not eliminate, supervisory liability for government officials based on an employee's or subordinate's constitutional violations.   See Garcia v. Casuas, No. CIV 11-0011 JB/RHS, 2011 WL 7444745, at *25-26 (D.N.M. Dec. 8, 2011)(Browning, J.)(citing Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010)).   The language that may have altered the landscape for supervisory liability in Ashcroft v. Iqbal is: "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."   Ashcroft v. Iqbal, 556 U.S. at 676.   The Tenth Circuit in Dodds v. Richardson stated:

> Whatever else can be said about Iqbal, and certainly much can be said, we conclude the following basis of § 1983 liability survived it and ultimately resolves this case: § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which "subjects, or causes to be subjected" that plaintiff "to the deprivation of any rights . . . secured by the Constitution[.]"

614 F.3d at 1199 (quoting 42 U.S.C. § 1983).   The Tenth Circuit has noted, however, that "Iqbal may very well have abrogated § 1983 supervisory liability as we previously understood it in this circuit in ways we do not need to address to resolve this case."   Dodds v. Richardson, 614 F.3d at 200.   It concluded that Ashcroft v. Iqbal did not alter "the Supreme Court's previously enunciated § 1983 causation and personal involvement analysis."   Dodds v. Richardson, 614 F.3d at 1200.   More specifically, the Tenth Circuit recognized that there must be "an 'affirmative' link

. . . between the unconstitutional acts by their subordinates and their 'adoption of any plan or policy . . . --express or otherwise -- showing their authorization or approval of such misconduct." Dodds v. Richardson, 614 F.3d at 1200-01 (quoting Rizzo v. Goode, 423 U.S. 362, 371 (1976)).   .

The specific example that the Tenth Circuit used to illustrate this principle is Rizzo v. Goode, in which the plaintiff sought to hold a mayor, a police commissioner, and other city officials liable under § 1983 for constitutional violations that unnamed individual police officers committed.   See Dodds v. Richardson, 614 F.3d at 1200 (quoting Rizzo v. Goode, 423 U.S. at 371).   The Tenth Circuit noted that the Supreme Court in that case found a sufficient link between the police misconduct and the city officials' conduct, because there was a deliberate plan by some of the named defendants to "crush the nascent labor organizations." Dodds v. Richardson, 614 F.3d at 1200 (quoting Rizzo v. Goode, 423 U.S. at 371).

## LAW REGARDING IMMUNITY OF COURT OFFICERS

Absolute immunity bars civil rights and state law claims against judicial officers acting as judges.   See Stump v. Sparkman, 435 U.S. 349, 355-56 (1978); Christensen v. Ward, 916 F.2d 1462, 1473-76 (10th Cir. 1990).   It is well settled that the doctrine of judicial immunity applies § 1983 actions.   See Van Sickle v. Holloway, 791 F.2d 1431, 1434-35 (10th Cir. 1986). Absolute immunity bars all suits for money damages for acts made in the exercise of judicial discretion. See Guttman v. Khalsa, 446 F.3d 1027, 1033 (10th Cir. 2006).

The Supreme Court of the United States of America has recognized absolute immunity for officials whose special functions or constitutional status require complete protection from suit. See Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982).   The purpose of absolute judicial immunity

is:

> to benefit the public, "whose interest is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." The Supreme Court has recognized that "the loser in one forum will frequently seek another, charging the participants in the first with unconstitutional animus." Therefore, absolute immunity is necessary so that judges can perform their functions without harassment or intimidation.

Van Sickle v. Holloway, 791 F.2d at 1434-35.

Prosecutors are entitled to immunity in the performance of their prosecutorial functions. See Imbler v. Pachtman, 424 U.S. 409, 430 (1976). The common law has long recognized that prosecutors must be given immunity from the chilling effects of the prospect of civil liability. See Burns v. Reed, 500 U.S. 478, 485 (1991). Prosecutors are absolutely immune from damages for their advocacy and activities "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. at 430. These activities include initiating a prosecution, presenting the State's case, evaluating evidence, determining whether probable cause exists, and conducting plea negotiations. See Pfeiffer v. Hartford Fire Ins. Co., 929 F.2d 1484, 1490 (10th Cir. 1991); Nielander v. Bd. of Cty. Comm'rs., 582 F.3d 1155, 1164 (10th Cir. 2009).

## **ANALYSIS**

Sekiya asserts claims against the doctor who allegedly implanted a nasal wiretap device and the federal prosecutors who allegedly used the device to discover information in a federal criminal case. See Complaint at 1-14. The Complaint raises at least ten different causes of action based on the alleged wiretap and/or federal prosecution. After filing the Complaint, Sekiya also filed twenty-four handwritten letters, notices, briefs, and motions. See Supplemental Filings. The Court will address which pleading controls, analyze the merits of the controlling pleading,

and rule on the three pending motions, to the extent the requested relief is not moot.

As noted above, rule 8 of the Federal Rules of Civil Procedure requires a short and plain statement of the grounds for relief.   <u>See</u> Fed. R. Civ. P. 8(a).   The original Complaint complies with this rule.   <u>See</u> Complaint at 1-2.   The briefs, supplements, and letters filed after the Complaint, however, do not comply with rule 8.   <u>See</u> Supplemental Filings.   The Supplemental Filings raise disjointed theories, provide real-time observations about prison life, and reference subject matter (for example, a family contract) that is entirely unrelated to the original pleading. <u>See</u> Supplemental Filings.   The Supplemental Filings also purport to add and remove Defendants who seemingly took no part in the alleged nasal wiretap, "mak[ing] the complaint a moving target." <u>Minter v. Prime Equip. Co.</u>, 451 F.3d 1196, 1206 (10th Cir. 2006).   The Court therefore concludes that the Complaint will control in this case and will screen that pleading under rule 12(b)(6) and § 1915(e).   If Sekiya wishes to pursue any claims he raised in the defective Supplemental Filings, he may reassert those claims in a single, amended complaint, as set forth below.

### A.   SEKIYA DOES NOT STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED AGAINST THE NAMED DEFENDANTS.

The only individuals Sekiya names in the Complaint are Dr. Shama, Mr. Anderson, and Mr. Trembley.   <u>See</u> Complaint at 1-2.   Sekiya raises various of causes of action against those Defendants based on their alleged implantation and use of a wiretap device in his nasal cavity. <u>See</u> Complaint at 1-2.   As noted above, § 1915 "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions . . . describe[e] fantastic or delusional scenarios."   <u>Neitzke v. Williams</u>, 490 U.S. at 327.   The Tenth

Circuit has repeatedly used this authority to reject civil rights claims based on the alleged implantation/use of mind control and tracking devices.   See, e.g., Thibeaux v. Cain, 448 F. App'x 863, 864 (10th Cir. 2012)(unpublished)(pro se lawsuit alleging that a wire had been implanted in plaintiff's body to monitor his thoughts was frivolous); Murray v. United States, 475 F. App'x 311, 312 (10th Cir. 2012)(unpublished)(complaint alleging various conspiracies by the government, including the use of satellites to damage the plaintiff's reproductive system, was properly dismissed); Flores v. U.S. Atty. Gen., 442 F. App'x 383 (10th Cir. 2011)(unpublished)(affirming § 1915(e)(2) dismissal of civil rights complaint alleging that the government used space satellites to torture the plaintiff and his family members); Kersh v. Smeler, 390 F. App'x 836 (10th Cir. 2010)(unpublished)(affirming dismissal of habeas petition where petitioner alleged an "invisible human robot conspiracy"); Owens-El v. Pugh, 16 F. App'x 878 (10th Cir. 2001)(unpublished)(affirming dismissal of claims as factually frivolous where prisoner alleged harassment and torture by way of a mind-control device).   Accordingly, Sekiya's claims against Dr. Shama, Mr. Anderson, and Mr. Trembley based on any alleged implantation of a nasal wiretap fail to state a plausible claim for relief.

To the extent that Sekiya also intends to sue Mr. Anderson and Mr. Trembly based on their decision to prosecute him in Federal Court, these claims also fail as a matter of law.   Prosecutors are absolutely immune from suit for actions "taken in connection with the judicial process." Imbler v. Pachtman, 424 U.S. at 431.   This immunity includes "initiating and pursuing a criminal prosecution[,]" "participate[ng] in a probable cause hearing[,]" and presenting evidence, including the "state's case at trial."   Glaser v. City & Cty. of Denver, Colo., 557 F. App'x 689, 705 (10th

- 14 -

Cir. 2014)(unpublished)(citing Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993)).   Aside from

the alleged wiretap issues, the Complaint appears to challenge the prosecutors' charging decision

and/or their recommendation that Sekiya remain in pretrial detention.   See Complaint at 1-16.

Mr. Anderson and Mr. Trembly took these actions in connection with the judicial process,

however, and are therefore immune from liability.   See Warnick v. Cooley, 895 F.3d 746, 751

(10th Cir. 2018)("[P]rosecutors are entitled to absolute immunity from liability for their decision

to file charges."); Snell v. Tunnell, 920 F.2d 673, 693 (10th Cir. 1990)(noting that prosecutors

enjoy absolute immunity from liability for "functions within the continuum of initiating and

presenting a criminal case, such as filing charges [and] seeking an arrest warrant").   For these

reasons, the Complaint fails to state a cognizable claim against any named Defendant.   The Court

will dismiss all claims against Dr. Shama, Mr. Anderson, and Mr. Trembley with prejudice

pursuant to § 1915(e)(2)(B)(ii).

### B.    SEKIYA DOES NOT STATE A CLAIM BASED ON HIS CONDITIONS OF CONFINEMENT.

Beyond the wiretap issue, the Complaint also appears to allege that CCCI maintains

inhumane confinement conditions.   See Complaint at 11.   Sekiya contends that his imprisonment

is tantamount to "cruel and unusual punishment" and "peonage" or involuntary servitude.   See

Complaint at 11.   To the extent that Sekiya intends to raise a claim under the Eighth Amendment

to the Constitution of the United States of America, the Complaint does not state a cognizable

claim.   Sekiya has not identified any wrongdoers responsible for his living conditions, or

"person[s] acting under color of state law."   McLaughlin v. Bd. of Tr., 215 F.3d at 1172.   In a

civil rights action, it is particularly important that the complaint "make clear exactly who is alleged

to have done what to whom, to provide each individual with fair notice as to the basis of the claim against him or her."  Robbins v. Oklahoma, 519 F.3d at 1249-50.

Moreover, the Complaint does not allege that prison officials deprived Sekiya of the "minimal civilized measure of life's necessities," inherent to an Eighth Amendment violation. Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  These necessities include "adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm." Tafoya v. Salazar, 516 F.3d 912, 916 (10th Cir. 2008).  To demonstrate that prison conditions amount to cruel and unusual punishment, the alleged deprivation must be objectively serious, and the prison official must "have a sufficiently culpable state of mind."  Craig v. Eberly, 164 F.3d 490, 495 (10th Cir. 1998)(quotations omitted)(setting out the two-part test).  Because the Complaint is entirely devoid of facts supporting his allegation of cruel and unusual punishment, the Court will dismiss any claims pertaining to Sekiya's conditions of confinement.

The Court's conclusion resolves the initial screening of the Complaint, as the only concrete factual allegations pertain to the nasal wiretap and the cruel and unusual conditions at confinement at CCCI.  See Complaint at 1-16.  The Court will not analyze any remaining labels cited in the Complaint, such as slavery, sedition, treason, defamation, and abuse of process, because Sekiya does not elaborate on these claims such that the Court can fairly evaluate them.  See Complaint at 1-16; Ashcroft v. Iqbal, 556 U.S. at 678 ("[A] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'" does not state a claim under rule 12(b)(6)." (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555)).

**C.   THE COURT DOES NOT GRANT SEKIYA LEAVE TO AMEND THE COMPLAINT AGAINST THE NAMED DEFENDANTS, BUT SEKIYA MAY AMEND THE COMPLAINT TO ELABORATE ON HIS EIGHTH AMENDMENT ALLEGATIONS.**

Having determined all claims must be dismissed, the Court will sua sponte consider whether to allow Sekiya to amend the pleading.  See Hall v. Bellmon, 935 F.2d at 1110.  Pro se plaintiffs should normally be given an opportunity to remedy defects in their pleadings.  Hall v. Bellmon, 935 F.2d at 1110.  Courts need not invite an amendment, however, when any amended claims would also be subject to immediate dismissal under rule 12(b)(6) or § 1915.  See Bradley v. Val-Mejias, 379 F.3d 892, 901 (10th Cir. 2004).  Here, amending the claims against the named Defendants would be futile.  Any claims regarding the nasal wiretap are factually frivolous, and as a matter of law, Sekiya cannot recover money damages from the parties responsible for his prosecution and incarceration.  The Court will therefore dismiss the claims against Defendants Dr. Shama, Mr. Anderson, and Mr. Trembley with prejudice.

As to the claims regarding Sekiya's conditions of confinement, the Court will grant leave to amend.  It is possible that the deficiencies in this claim "are attributable to oversights . . . the result of an untutored pro se litigant's ignorance of special pleading requirements[.]"  Reynoldson v. Shillinger, 907 F.2d 124, 126 (10th Cir. 1990).  Sekiya may file a single, legible amended complaint asserting claims pertaining to his conditions of confinement, or other claims in the Supplemental Filings that the Court did not consider, within thirty days of entry of this ruling.  If Sekiya declines to file a single amended complaint or files another complaint that fails to comply with rule 8(a) and rule 12(b)(6), the Court will dismiss this action with prejudice and without further notice.

**D.      THE COURT DISMISSES THE PENDING MOTIONS ON THEIR MERITS.**

The Court last turns to Sekiya's pro se motions requesting: (i) an order requiring the removal of any nasal wiretap; (ii) a hearing; and (iii) a venue change.   See Motion for Order -- Court Mandate at 1; Motion for Hearing at 1; and Motion to Change Venue at 2.   Having determined that no relief is available based on any alleged nasal wiretap, the Court will deny Sekiya's Motion for Order -- Court Mandate.   As to the hearing request, such relief is premature. There is no basis for a hearing at this point, because Sekiya has not stated a viable claim, and no defendants have appeared in the case.   See Jones v. Bock, 549 U.S. 199, 213-214 (2007)("[U]nlike in the typical civil case, defendants do not have to respond to a complaint covered by the [Prison Litigation Reform Act, 42 U.S.C. § 1997e,] until required to do so by the court."). The Court will also deny the Motion for Hearing.   If any claims survive initial review, Sekiya may renew his request for a hearing.   In Sekiya's final motion, he asks the Court to transfer venue to another, unspecified court, because the Court did not immediately rule on the Motion for Hearing and grant relief in the case.   See Motion to Change Venue at 1.   This request is moot, because the Court has now ruled on all pending matters, but it is also without merit.   Sekiya has not demonstrated any other district would have jurisdiction over his claims, nor has he identified a district where he prefers to litigate.   See 28 U.S.C. § 1404(a) (stating that a district court may transfer an action "[f]or the convenience of parties and witnesses, [and] in the interest of justice, . . . to any other district or division where it might have been brought."); Employers Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1167 (10th Cir. 2010)(ruling that the "party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is

inconvenient" and otherwise inappropriate).    The Court will therefore deny the Motion to Change Venue.

**IT IS ORDERED:** that (i) the Prisoner Civil Rights Complaint Pursuant to 42 U.S.C. § 1983, filed February 21, 2019 (Doc. 1), is dismissed with prejudice as to Plaintiff Mikko Sekiya's claims against Defendants Dr. Shama, John Anderson, and Timothy Trembley, and without prejudice as to Sekiya's Eighth Amendment claims; (ii) Sekiya has thirty days from this Memorandum Opinion and Order's entry to filed an amended complaint elaborating his Eighth Amendment Claim; and (iii) the Court denies all pending motions.

_____
UNITED STATES DISTRICT JUDGE

*Party*

Mikko Sekiya
Milan, New Mexico

     *Plaintiff pro se*

- 19 -