IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**MIKKO SEKIYA,**

    **Plaintiff,**

vs.                                                                                                                  CIV No. 19-0146 JB/JHR

**JOHN ANDERSON,**
**TIMOTHY TREMBLEY,** *and*
**UNITED STATES OF AMERICA,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court following Plaintiff Mikko Sekiya's failure to file an amended prisoner civil rights complaint that satisfies rule 12(b)(6) of the Federal Rules of Civil Procedure. Sekiya is incarcerated, pro se, and proceeding in forma pauperis. See Order Granting Leave to Proceed Pursuant to 28 U.S.C. § 1915(b), entered September 16, 2019 (Doc. 5)("IFP Order"). The Court previously dismissed his Prisoner Civil Rights Complaint Pursuant to 42 U.S.C. § 1983, filed February 21, 2019 (Doc. 1)("Original Complaint"), for failure to state a cognizable claim and granted leave to amend. See Memorandum Opinion and Order, filed July 31, 2020 (Doc. 32)("Screening MOO"). Having reviewed Sekiya's amended pleading, the Court concludes he still does not to state a cognizable claim and will dismiss this action with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

Sekiya is a federal inmate, and he is currently in custody at the Cibola County Correctional Center in Milan, New Mexico. See Original Complaint at 1. In the Original Complaint, Sekiya alleges a doctor implanted a wiretap device in his nasal passage and that United States prosecutors used the wiretap to gain information. See Original Complaint at 2, 14. The Original Complaint

named three Defendants: (i) Dr. Shama, an ear, nose, and throat otolaryngologist physician at the University of New Mexico Hospital ("UNMH"); (ii) United States Attorney John Anderson; and (iii) Assistant United States Attorney Timothy Trembley.  See Original Complaint at 1-2.  Sekiya alleges Dr. Shama performed a surgery at UNMH to correct Sekiya's deviated septum.  See Original Complaint at 14.  The Original Complaint did not indicate when Dr. Shama performed the surgery, but based on Sekiya's allegations about "going thr[ough] this issue for five years," the Court discerns the surgery occurred in 2014.  See Original Complaint at 2.  Sekiya believes Dr. Shama implanted a wiretap surveillance device in his left nasal passage during surgery.  See Original Complaint at 2, 14.  The Original Complaint alleges that neither Dr. Shama nor UNMH obtained a warrant nor court Order to implant any device.  See Original Complaint at 14.

The Original Complaint further alleges the United States Attorney's Office ("USAO"), and specifically Anderson and Trembley, obtained information via the nasal wiretap.  Original Complaint at 1-2.  According to Sekiya, Anderson and Trembley did not have a warrant to monitor Sekiya via any microchips in his body.  See Original Complaint at 1-2.  The Original Complaint appears to suggest that Anderson and Trembley used the nasal wiretap to obtain information relevant to Sekiya's federal criminal case, see United States v. Sekiya, CR No. 18-1575 WJ.  In that case, a jury convicted Sekiya of theft of a firearm from a licensed firearms dealer (18 U.S.C. § 922(u)); felon in possession of a firearm and ammunition, 18 U.S.C. § 922(g)(1)); and possession of a stolen firearm, 18 U.S.C. § 922(j)).  United States v. Sekiya, CR No. 18-1575 WJ, Redacted Jury Verdict, filed November 7, 2019 (Doc. X) in.  The Honorable William Johnson, Chief United States District Judge for the District of New Mexico, sentenced Sekiya to a total term of 90-months imprisonment.  See United States v. Sekiya, CR No. 18-1575 WJ,

Amended Clerk's Minutes entered June 15, 2020.

Applying liberal construction, the Court determined the Original Complaint raises claims under 42 U.S.C. § 1983 based on: (i) "illegal tapping of one's nasal cavity[;]" (ii) "forced labor, slavery/privacy video voyeurism[;]" and (iii) "radiological dispersal devices." Original Complaint at 14-15. In the section addressing "Nature of the Case," Sekiya lists other causes of actions stemming from the use of a wiretap and/or the criminal prosecution, including entrapment; defamation; treason; sedition; rebellion; slavery; forced labor; sale into involuntary servitude; abuse of process; cruel and unusual punishment; unconstitutional conditions of confinement. See Original Complaint at 3-8. Sekiya also alleges that the Defendants violated the New Mexico Constitution, including the idea of "popular sovereignty" – a theory where all political power is vested in the people – and Sekiya's right to maintain "safety and happiness in any way he sees fit . . . ." Original Complaint at 8-9. Based on these allegations, the Original Complaint sought $3 trillion in damages and immunity from criminal prosecution. See Original Complaint at 16-17. Sekiya also asks the Court to subpoena the testimony of Facebook co-founder Mark Zuckerberg, who allegedly has evidence to the support the wiretap claim, and to order a heating/plumbing technician to sweep certain buildings for wiretaps or tracking devices. See Original Complaint at 14-15.

After filing the Original Complaint, Sekiya filed at least twenty-four handwritten letters, notices, briefs, and motions. See Docs. 6-29 ("Supplemental Filings"). The Supplemental Filings address a myriad of unrelated topics, including medical scans, Federal Bureau of Investigations (FBI) investigations dating back to 1991, and a contract dispute among Sekiya's family members. The Court referred the matter to the Honorable Jerry H. Ritter, United States

Magistrate Judge for the United States District of New Mexico, for recommended findings and disposition, and to enter non-dispositive orders. See Order Referring Case, filed February 22, 2019 (Doc. 3). Sekiya obtained leave to proceed in forma pauperis, which enabled the Court to conduct an initial, sua sponte review of the Original Complaint pursuant to 28 U.S.C. § 1915(e) and rule 12(b)(6) of the Federal Rules of Civil Procedure. See IFP Order. At 1. On July 31, 2020, the Court issued its Screening MOO, which held that: (i) Sekiya's supplemental filings do not comply with rule 8(a) of the Federal Rules of Civil Procedure, and (ii) the discernable allegations do not state a claim under rule 12(b)(6) of the Federal Rules of Civil Procedure. See Screening MOO at 1, 13.

Consistent with Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991), and Sekiya's status as a pro se prisoner, the Court sua sponte granted leave to file an amended complaint. See Screening MOO at 17, 19. The original deadline to amend was August 31, 2020. See Screening MOO at 19. Rather than filing an amended complaint that complies with rule 8(a) or rule 12(b)(6), Sekiya filed on August 19, 2020, a handwritten motion seeking to amend his original Complaint. See Untitled Handwritten Letter, filed August 19, 2020 (Doc. 33)("Letter Motion"). The Letter Motion consists of two paragraphs and states:

> I Mikko Sekiya come forth with this request to delete the Romeros [sic] family from the plaintiffs and add the Sekiya family to the above cause # 19-CV-00146 JB-JHR and add Rick Benavidez and Paul Rivera[,] Robert Sekiya, Patsy Howe and delete Erica Beaty D.O.J., and Cynthia C.I.A. from the above cause #.
>
> And put a head of Protection all over Plaintiffs on the above cause # and a hearing to be set to hear this motion.

Letter Motion at 1, 3.

By an Order entered August 21, 2020, Magistrate Judge Ritter observed that the Court already granted leave to file an amended complaint, but discerned that Sekiya may wish to extend the amendment deadline.  See Order Extending Amendment Deadline, filed August 21, 2020 (Doc. 34)("Amendment Order").   The Amendment Order extends the deadline to file an amended civil rights complaint through September 21, 2020.  See Amendment Order at 1.  The Amendment Order warns that if Sekiya declined to file timely another complaint, the Court may treat the Letter Motion and other letter filings submitted by September 21, 2020 as the operative pleadings for screening purposes.  See Amendment Order at 1.  Sekiya has not submitted an amended complaint or any other filings after the Letter Motion.  The Court therefore will: (i) summarize the reasons for dismissing the Original Complaint; (ii) explain why the Letter Motion does not state a cognizable claim; and (iii) dismiss this action with prejudice for failure to state a claim upon which relief can be granted.

## LAW REGARDING INITIAL REVIEW OF PRISONER COMPLAINTS

Section 1915(e) of Title 28 of the United States Code requires the Court to conduct a sua sponte review of all civil complaints where the plaintiff is proceeding in forma pauperis.  See 28 U.S.C. § 1915(e).  The Court must dismiss any in forma pauperis complaint that is frivolous, malicious, or "fails to state a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2).  The Court also may dismiss a complaint sua sponte under rule 12(b)(6) if "it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing [ the plaintiff] an opportunity to amend [the] complaint would be futile."  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)(quotations omitted).  In other words, the same standard of review applies under rule 12(b)(6) and § 1915(e).

Rule 12(b)(6) tests the "sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994)(citing Williams v. Meese, 926 F.2d 994, 997 (10th Cir. 1991)).  A complaint's sufficiency is a question of law, and when reviewing the complaint, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322-23 (2007)("[O]nly '[i]f a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts' would the defendant prevail on a motion to dismiss." (second alteration in Tellabs, Inc. v. Makor Issues & Rights, Ltd.) 437 F.3d 588, 602 (7th Cir. 2006)) (quoting Makor Issues & Rights, Ltd. v. Tellabs, Inc, 437 F.3d 602)); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009) ("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." (citing Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006))).

A complaint need not set forth detailed factual allegations, yet "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'" is insufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. at 678.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (citations and footnote omitted).  Section 1915(e) expands this inquiry

by granting courts "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims" that are fantastical and/or which belies record.  Neitzke v. Williams, 490 U.S. 319, 327 (1989).

To survive rule 12(b)(6) review, a plaintiff's complaint must contain sufficient "facts that, if assumed to be true, state a claim to relief that is plausible on its face."  Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010)(citing Ashcroft v. Iqbal, 556 U.S. at 678).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted). The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Okla., 519 F.3d 1242, 1247 (10th Cir. 2008)(McConnell, J.)(citation omitted)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570).

In conducting the initial review, the pleadings of the pro se prisoner "are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."  Hall v.

Bellman, 935 F.2d at 1110.  If the court can "reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, . . . confusion of various legal theories, . . . poor syntax and sentence construction, or . . . unfamiliarity with pleading requirements." Hall v. Bellman, 935 F.2d at 1110. At the same time, however, pro parties must file a legible pleading that complies with Rule 8 of the Federal Rules of Civil Procedure.  That rule requires: "(1) a short and plain statement of the grounds for the court's jurisdiction . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought . . . ."  Fed. R. Civ. P. 8(a).  "It is not the role of . . . the court . . . to sort through a lengthy . . . complaint and voluminous exhibits . . . to construct plaintiff's causes of action."  McNamara v. Brauchler, 570 Fed. App'x 741, 743 (10th Cir. 2014)(citations omitted).[1]  See also Pola v. Utah, 2012 WL 292272, * 1 (10th Cir. Feb. 1, 2012)(affirming dismissal of complaint that "included everything but the kitchen sink"). Allowing such pleadings to survive screening "would force the Defendants to carefully comb

---

[1]Stack v. McCotter is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored.  However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that Stack v. McCotter and the other unpublished opinions cited herein. See (Pola v. Utah, 2012 WL 292272, * 1 (10th Cir. Feb. 1, 2012) and Dunn v. Harper County, 520 Fed. App'x. 723, 725-26, 2013 WL 1363797 at *2 (10th Cir. April. 5, 2013)), have persuasive value with respect to material issues and will assist the Court in its disposition of this Memorandum Opinion and Order.

through" various documents "to ascertain which . . . pertinent allegations to which a response is warranted." McNamara v. Brauchler, 570 Fed. App'x at 743.

## LAW REGARDING 42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 creates only the right of action; it does not create any substantive rights. Substantive rights must come from the Constitution or from a federal statute. See Nelson v. Geringer, 295 F.3d 1082, 1097 (10th Cir. 2002)("[S]ection 1983 did not create any substantive rights, but merely enforces existing constitutional and federal statutory rights . . . .")(internal quotation marks, alteration, and citation omitted). Section 1983 authorizes an injured person to assert a claim for relief against a person who, acting under color of state law, violates the claimant's federally protected rights. To state a claim upon which relief can be granted under § 1983, a plaintiff must allege: (i) a deprivation of a federal right; and (ii) that the person who deprived the plaintiff of that right acted under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988). The Court has noted:

[A] plaintiff must establish (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a "person" (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia.

Schaefer v. Las Cruces Public School Dist., 716 F.Supp.2d 1052, 1063 (D.N.M. 2010)(Browning, J.)(quoting Summum v. City of Ogden, 297 F.3d 995, 1000 (10th Cir. 2002)).

The Supreme Court has clarified that, in alleging a § 1983 action against a government agent in his or her individual capacity, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Consequently, there is no respondeat superior liability under § 1983. See Ashcroft v. Iqbal, 556 U.S. at 675. ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997). Entities cannot be held liable solely on the basis of the existence of an employer-employee relationship with an alleged tortfeasor. See Monell v. Dep't of Social Servs. of City of New York, 436 U.S. 658, 689 (1978). Supervisors can be held liable only for their own unconstitutional or illegal policies, and not for their employees' tortious acts. See Barney v. Pulsipher, 143 F.3d 1299, 1307–08 (10th Cir. 1998).

The Tenth Circuit recognizes that non-supervisory defendants may be liable if they knew or reasonably should have known that their conduct would lead to the deprivation of a plaintiff's constitutional rights by others, and an unforeseeable intervening act has not terminated their liability. See Martinez v. Carson, 697 F.3d 1252, 1255 (10th Cir. 2012)(quoting 42 U.S.C. § 1983; Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 2006)(internal quotation marks omitted)). The Tenth Circuit also recognizes that Ashcroft v. Iqbal limited, but did not eliminate, supervisory liability for government officials based on an employee's or subordinate's constitutional violations. See Garcia v. Casuas, 2011 WL 7444745, at *25–26 (D.N.M. 2011)(Browning, J.)(citing Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010)). The language that may have altered the landscape for supervisory liability in Ashcroft v. Iqbal is: "Because vicarious liability is

inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. at 676.  The Tenth Circuit in Dodds v. Richardson stated:

> Whatever else can be said about Iqbal, and certainly much can be said, we conclude the following basis of § 1983 liability survived it and ultimately resolves this case: § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which "subjects, or causes to be subjected" that plaintiff "to the deprivation of any rights . . . secured by the Constitution . . ."

614 F.3d at 1199. The Tenth Circuit has noted, however, that "Iqbal may very well have abrogated § 1983 supervisory liability as we previously understood it in this circuit in ways we do not need to address to resolve this case." Dodds v. Richardson, 614 F.3d at 1200. It concludes that Ashcroft v. Iqbal did not alter "the Supreme Court's previously enunciated § 1983 causation and personal involvement analysis." Dodds v. Richardson, 614 F.3d at 1200. More specifically, the Tenth Circuit recognized that there must be "an 'affirmative' link . . . between the unconstitutional acts by their subordinates and their 'adoption of any plan or policy . . . —express or otherwise—showing their authorization or approval of such misconduct." Dodds v. Richardson, 614 F.3d at 1200.

The specific example that the Tenth Circuit used to illustrate this principle is Rizzo v. Goode, 423 U.S. 362 (1976), where the plaintiff sought to hold a mayor, a police commissioner, and other city officials liable under § 1983 for constitutional violations that unnamed individual police officers committed. See Dodds v. Richardson, 614 F.3d at 1200 (quoting Rizzo v. Goode, 423 U.S. at 371). The Tenth Circuit noted that the Supreme Court in that case found a sufficient link between the police misconduct and the city officials' conduct, because there was a deliberate

plan by some of the named defendants to "crush the nascent labor organizations." Dodds v. Richardson, 614 F.3d at 1200 (quoting Rizzo v. Goode, 423 U.S. at 371).

## LAW REGARDING IMMUNITY OF COURT OFFICERS

Absolute immunity bars civil rights and state law claims against judicial officers acting as judges. See Stump v. Sparkman, 435 U.S. 349, 355-56 (1978); Christensen v. Ward, 916 F.2d 1462, 1473-76 (10th Cir. 1990). It is well settled that the doctrine of judicial immunity applies 42 U.S.C. § 1983 actions. See Van Sickle v. Holloway, 791 F.2d 1431, 1434-35 (10th Cir. 1986). Absolute immunity bars all suits for money damages for acts made in the exercise of judicial discretion. See Guttman v. Khalsa, 446 F.3d 1027, 1033 (10th Cir. 2006).

The Supreme Court of the United States has recognized absolute immunity for officials whose special functions or constitutional status require complete protection from suit. See Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982). The purpose of absolute judicial immunity is:

> to benefit the public, "whose interest is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." The Supreme Court has recognized that "the loser in one forum will frequently seek another, charging the participants in the first with unconstitutional animus." Therefore, absolute immunity is necessary so that judges can perform their functions without harassment or intimidation.

Van Sickle v. Holloway, 791 F.2d at 1434-35.

Prosecutors are entitled to immunity in the performance of their prosecutorial functions. See Imbler v. Pachtman, 424 U.S. 409, 430 (1976). The common law has long recognized that prosecutors must be given immunity from the chilling effects of civil liability. See Burns v. Reed, 500 U.S. 478, 485 (1991). Prosecutors are absolutely immune from damages for their advocacy and activities "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. at 430. This includes initiating a prosecution, presenting the State's case,

evaluating evidence, determining whether probable cause exists, and conducting plea negotiations. See Pfeiffer v. Hartford Fire Ins. Co., 929 F.2d 1484, 1490 (10th Cir. 1991); Nielander v. Board of County Com'rs., 582 F.3d 1155, 1164 (10th Cir. 2009).

Although public defenders and defense attorneys do not enjoy the same immunity as judges and prosecutors, they likewise cannot be sued under § 1983. A plaintiff can only succeed in a § 1983 action where the defendant acted under color of state law. See West v. Atkins, 487 U.S. at 48. The Supreme Court specifically has held that a public defender does not act under color of state law when acting as counsel to a defendant in a criminal proceeding. See Polk County. v. Dodson, 454 U.S. 312, 315 (1981). The rule also extends to "counsel [that] is privately retained." Vermont v. Brillon, 556 U.S. 81, 91 (2009). As the Supreme Court has explained:

> "Once a lawyer has undertaken the representation of an accused, the duties and obligations are the same whether the lawyer is privately retained, appointed, or serving in a legal aid or defender program."
>
> Vermont v. Brillon, 556 U.S. 81, 91 (2009) (quoting Polk County v. Dodson, 454 U.S. at 318).

See Dunn v. Harper County, 520 Fed. App'x. 723, 725-26, 2013 WL 1363797 at *2 (10th Cir. April 5, 2013)("[I]t is well established that neither private attorneys nor public defenders act under color of state law for purposes of § 1983 when performing traditional functions as counsel to a criminal defendant."). Thus, a plaintiff cannot recover damages from his state defense lawyer, even if the representation was inadequate, because "the conduct" is not "chargeable to the state." Barnard v. Young, 720 F.2d 1188, 1189 (10th Cir. 1983).

## ANALYSIS

In the Original Complaint, Sekiya asserts claims against the doctor who allegedly implanted a nasal wiretap device and the federal prosecutors who allegedly used the device to

discover information in a federal criminal case. See Original Complaint, at 1-14. The Complaint raises no fewer than ten different causes of action based on the alleged wiretap and/or federal prosecution. After filing the Original Complaint, Sekiya also filed twenty-four handwritten letters, notices, briefs, and motions. See Docs. 6-29. As an initial matter, the Screening MOO holds that the supplemental filings do not comply with rule 8(a) and that screening will be limited to the Original Complaint.

The Screening MOO went on to conclude that the Original Complaint fails to state a cognizable constitutional claim, for several reasons. First, the Original Complaint contains "contentions … [that] describe[d] fantastic or delusional scenarios," which are subject to dismissal under 28 U.S.C. § 1915(e). Neitzke v. Williams, 490 U.S. at 327. The Screening MOO further found the Prosecutor-Defendants are also absolutely immune from suit for actions "taken in connection with the judicial process." Imbler v. Pachtman, 424 U.S. 409, 431 (1976). This includes "initiating and pursuing a criminal prosecution[,]" "participate[ng] in a probable cause hearing[,]" and presenting evidence, including the "state's case at trial." Glaser v. City & Cty. of Denver, Colo., 557 Fed. App'x 689, 705 (10th Cir. 2014)(unpublished)(citing Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993)). As to Sekiya's passing argument that his imprisonment is tantamount to "cruel and unusual punishment" and "peonage," the Court determined that the Original Complaint fails to identify any wrongdoers responsible for his living conditions. See McLaughlin v. Bd. of Trustees, 215 F.3d at 1172 (noting a § 1983 complaint is only viable where the defendants qualify as "person[s] acting under color of state law"). The Screening MOO explains that it is particularly important that the complaint "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claim

against him or her." Robbins v. Oklahoma, 519 F.3d 1242, 1249–50 (10th Cir. 2008).

For these reasons, the Screening MOO dismisses the Original Complaint without prejudice pursuant to rule 12(b)(6) and 28 U.S.C. § 1915(e). The Screening MOO found it would be futile to amend any claims regarding the alleged nasal wiretap, as those claims are barred as factually frivolous. The Court granted leave to file a single, legible amended complaint asserting, however, claims pertaining to Sekiya's conditions of confinement, or other claims in the supplemental filings that the Court did not consider in the Screening MOO. The Screening MOO specifically warned that if Sekiya declines to timely file an amended complaint, or files another complaint that does not comply with rule 8(a) and rule 12(b)(6), "the Court w[ould] dismiss this action with prejudice and without further notice." Screening MOO at 17.

The Court construes the Letter Motion as an amended complaint, as it is the only document Sekiya filed after the Screening MOO. As noted above, the Letter Motion consists of two paragraphs and states:

> I Mikko Sekiya come forth with this request to delete the Romeros [sic] family from the plaintiffs and add the Sekiya family to the above cause # 19-CV-00146 JB-JHR and add Rick Benavidez and Paul Rivera[,] Robert Sekiya, Patsy Howe and delete Erica Beaty D.O.J., and Cynthia C.I.A. from the above cause #.
>
> And put a head of Protection all over Plaintiffs on the above cause # and a hearing to be set to hear this motion.

Letter Motion at 1, 3.

These allegations do not constitute a short and plain statement of the grounds for relief, as rule 8(a). requires. They also fail to "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claim against him or her," as rule 12(b)(6) requires and Tenth Circuit pleading standards. Robbins v. Oklahoma, 519 F.3d

at 1249-50.   There is no indication what, if any, wrongdoing the Sekiya family committed, nor is there any basis to place a protection detail on Sekiya or hold a hearing.   The Court discerns Sekiya seeks a protection detail because he believes someone inserted a wiretap in his nasal cavity, but, as discussed, the Screening MOO, the Court cannot grant relief in connection with that claim. The Court will therefore dismiss the Letter Motion and this civil action with prejudice pursuant to rule 8(a), rule 12(b)(6), and 28 U.S.C. § 1915(e) for failure to file a short and plain statement of the grounds for relief and for state a claim upon which relief may be granted.

**IT IS ORDERED** that Mikko Sekiya's Prisoner Civil Rights Complaints, including the Prisoner Civil Rights Complaint Pursuant to 42 U.S.C. § 1983, filed February 21, 2019 (Doc. 1) and the Untitled Handwritten Letter, filed August 19, 2020 (Doc. 33), are dismissed with prejudice pursuant to rule 12(b)(6) and 28 U.S.C. § 1915(e).   The Court will enter a separate judgment closing the civil case.

**SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE

*Parties:*

Mikko Sekiya
Cibola County Correctional Center
Milan, New Mexico
        *Plaintiff pro se*